NEW YORK,
. Sept. 1826.

Disbrow
v.
Henshaw.

BENJAMIN DISBROW, appellant, *against* MARY HENSHAW (late MARY GUMBLE,) and CHRISTIANA ELIZA GUMBLE, on behalf of themselves and others, respondents.(a)

Where it is intended to set aside an appeal, or part of an appeal, to the court of errors, on the ground that it was made after the time allowed by the statute of limitations, (*e. g.* where the appeal is from an interlocutory order of the court of chancery, after fifteen days from the time of *the order made,) this should properly be done on motion for the purpose. It is too late to object at the hearing. Per SUTHERLAND, J., interrupting *Anthon, arguendo.*

[*350]

A guardian, though appointed by the surrogate, may be removed from his office, compelled to account, and another guardian be substituted by the court of chancery, on petition. A bill is not necessary.

Though the chancellor may, in his discretion, order a bill to be filed. Per SUTHERLAND, J.

An appeal lies from that part of a decree which relates to the costs only.

So it lies from an order made on petition.

But not in all cases. It is rather a matter of discretion with the court of errors, whether they will take cognizance of such appeal. Per SUTHERLAND, J.

APPEAL from the court of chancery. On the 4th of June, 1823, the respondents, Mary Henshaw and Christiana Eliza Gumble, without notice to the appellant, presented their petition to KENT, (then chancellor,) entitled thus: "In the matter of the petition of Mary Henshaw, (late Mary Gumble,) of the age of 21 years and upwards, and of Christiana Eliza Gumble, an infant of the age of 14 years and upwards, on behalf of themselves and their brothers, J. H. Gumble, J. C. Gumble, A. L. Gumble and L. K. Gumble, who are also infants under the age of 14 years; and also on behalf of Andrew Francis, also an infant of about the age of 19 years."

The petition stated that Mary Henshaw and the Gumbles, being seised in fee, as heirs or devisees of their mother, Elizabeth Gumble, deceased, of the one undivided half of certain real estate in the city of New York, Andrew Francis being seised in fee of the other half, the appellant,

(a) This cause was decided at Albany, December, 1825.

who was also the acting executor of the testatrix, caused himself to be appointed by the surrogate of New York, the general guardian of the Gumbles, and one Abraham Cross caused himself in the same manner, to be appointed guardian of Francis. That the appellant had caused a bill to be filed in the court of chancery, in the name of Francis as complainant, by the appellant as his next friend, against Mary Henshaw and the Gumbles, ostensibly for the partition of the real estate; but in reality to procure a sale, and be enabled to purchase it himself, and speculate on the rights of the parties interested. That one David Perry, junior, was afterwards substituted for *the appellant, as the next friend of Francis; but Perry died in March, 1823; and no person had since been appointed in his place. The petition set forth the particulars, showing that the suit for partition was improper, and a violation of the appellant's trust as guardian, and also impeached Cross as guardian of Francis; and prayed that the letters of guardianship might be revoked as to both; that the suit in chancery might be set aside with costs; that Peter Van Arsdale might be appointed guardian for all the infants; and for an account of both guardianships.

NEW YORK,<br>Sept. 1826.<br>───<br>Disbrow<br>v.<br>Henshaw.

[*351]

This petition was verified by the oath of Mary Henshaw.

Chancellor KENT immediately made an order, referring it to a master to inquire into and report upon the the matters set forth in the petition, he giving due notice to the guardians, and that a copy of the petition be, at the same time, served on them.

Francis died previous to any proceedings before the master.

On the 18th of November, 1823, chancellor SANFORD made an order confirming the master's report, which was unfavorable to the guardians. The order was, farther, that the letters of guardianship be revoked and annulled; that the appellant pay certain reported balances to Mary Henshaw, and the (then) future guardian of the Gumbles; that he pays the costs of the petition and subsequent proceedings, to the time of the last order; and that it be re-

Disbrow
v.
Henshaw.

ferred, &c., to inquire of a proper guardian for the Gumbles, &c.

From this order Disbrow appealed; that is to say, on the 29th of November, 1823, he appealed from that part of the order relating to costs; and on the 31st of December thereafter, from the residue of the order.

I do not give the particulars of the master's report upon the conduct of the appellant as guardian, though this was necessarily involved in the decision, and adverted to by this court, who agreed with the chancellor. It was a mere question of fact.

[*352]

*The reasons for the order were assigned, in the court below, as follows, by

SANFORD, Chancellor. The counsel of the parties agree that Disbrow shall no longer be the guardian of these minors, he being willing to resign the trust, and the petitioners urging his removal. The only subject now in dispute is the question of costs, and this is discussed and contested with all the zeal of adverse litigation. Disbrow insists that he is not justly chargeable with any costs, and the petitioners contend that he should be subjected to the costs of the suit for partition, and to all costs which have arisen or may accrue upon this petition. This guardian, who was also an executor, certainly deviated from the directions of the will in some particulars; but these deviations from his duty, though not justifiable, seem to have been not very important. One act in his administration as guardian, appears to me to have been clear and great misconduct: I mean the suit which was instituted in this court to obtain a partition of the lands of his wards. That suit was unnecessary and altogether unwarrantable; and I entirely concur with the master, in his opinion and his reasons in respect to that proceeding. Whatever may have been the motives which led to that measure, it is certain that a partition or a sale of the lands was not necessary or proper, and could not have been beneficial to these minors. For these reasons, it is just that Disbrow should pay costs, but not all the costs which are now claimed against him.

The suit for partition is at an end, or at least cannot proceed without an order of this court. Upon this petition there must be further proceedings to appoint a guardian in the place of Disbrow, and further costs must accrue. The order will be, that Disbrow pay the costs arising upon this petition to this time, and any other costs against him are refused.

NEW YORK,
Sept. 1826.

Disbrow
v.
Henshaw.

*J. Anthon*, for the appellant. The proceeding by petition was erroneous. A guardian cannot be removed and compelled to account upon the petition of his ward. The *infants are not bound by the proceedings. A bill should be filed so as to create a *lis pendens*, in order that all parties may be bound by the decree. A suit is always commenced by filing a bill. (2 Mad. Ch. 135.) A petition is proper only in relation to some collateral matter in a suit already pending. (10 John. 521; Newl. Ch. Pr. 60, 61; 2 Har. Ch. Pr. 40, 41; 2 Mad. Ch. 441; 3 John. Ch. Rep. 408, 409; 3 P. Wms. 154.)

[*353]

Supposing the appellant liable for costs, he ought not to have been ordered to pay the costs arising upon such part of the proceedings as related to Cross and Perry.

*S. M. Hopkins*, contra. The appeal of the 29th of November cannot be sustained. Being an appeal against the payment of costs only, it is not allowable by the established practice both of the court of chancery and this court. (*Eastburn* v. *Kirk*, 2 John. Ch. Rep. 317.) The second appeal was too late, being from an interlocutory order. It should have been within 15 days from the time of making the order. (1 R. L. 134.) It cannot, therefore, supply the deficiency in the first appeal.

The order was right on the merits, and the proceeding was regularly commenced by petition. (1 John. Ch. Rep. 99.) The application for the removal of a guardian, like an original application for the appointment of one, is properly by petition; (7 Ves. 348; 1 Ball & Beatty, 74;) and his accounting is incident to the proceeding. No objection

NEW YORK, was made in the court below upon this branch of the case;
Sept. 1826. and, therefore, none can be raised here.

Disbrow          No appeal will lie from an order made on petition.
v.
Henshaw.

*Anthon*, in reply, said the objection that the second appeal was not in season, cannot be taken at the hearing. It should be on motion to dismiss the appeal. (3 John. Rep. 564; 9 id. 443.)

[SUTHERLAND, J. Undoubtedly that is the practice of the court. I remember several applications to dismiss appeals, or parts of appeals for lateness of time, or other facts showing that the appellant was irregular.]

[*354]          *The second appeal was to relieve us from the doubt whether we might appeal on the question of costs alone; there being no doubt that we may object to costs when connected with other matters. If the question of time be taken into view, then we deny that the order appealed from was interlocutory. It was upon the merits; and therefore is to be esteemed final in its character, within the meaning of our statute of limitation. (2 Har. Ch Pr. 622.)

But the English practice relative to the right of appeal against costs, does not govern here. The statute is general and explicit; and gives a right of appeal upon any error of the court of chancery, in any order or part of such order, without exception. (1 R. L. 134, s. 8) And so are our cases. (4 John. Rep. 528; 9 id. 448; 12 id. 511.) *Codwise* v. *Gelston*, (10 John. 507, 521,) answers the objection, that no appeal lies from an order or decree made on petition.

We were aware that guardians are removed in England on petition; but it is where they are originally appointed by the court of chancery: and they are, therefore, considered officers of the court, and subject to its immediate control. (1 Ball & Beatty, 74.) Here the officer is appointed by the surrogate.

[TALLMADGE, President. But does not the question depend upon the chancellor's general jurisdiction over infants?

May he not follow and control their persons or property <span>NEW YORK,<br>Sept. 1826.</span>
at his pleasure ?]

Disbrow
v.
Henshaw.

Undoubtedly. But this must be in due form, and according to the practice of the court ; which we insist is, on bill filed, answer, proofs and decree. He cannot proceed arbitrarily, in any manner he pleases.

SUTHERLND, J., (after examining the facts and expressing his concurrence with the chancellor upon the merits.) It is objected that the suit, or proceeding in the court of chancery, should have been commenced by bill ; and not by petition. Ordinarily, this is so. But it is *abundantly [*355] settled, that the proceeding to remove a guardian is an exception. He is proceeded against summarily as an officer of the court of chancery ; and in this state, he has uniformly been considered as holding that character, whether he takes his appointment from the court, from a surrogate or in any other way. (1 John. Ch. Rep. 99, 100.) Standing in this relation to the court, it follows that he may be compelled to account and pay costs in the same proceeding. If, on presenting the petition, and examining the case in this summary way, it appears to the chancellor that the questions raised will be strongly litigated, he may then turn the party round, in his discretion, to the more formal and solemn course of a bill.

<span>Guardian appointed by the surrogate, is removable by petition to the court of chancery, and may be compelled to account in the same way. The chancellor may, in his discretion, direct a bill to be filed.</span>

The respondents contend, that an appeal will not lie from an order for costs ; or from any order made on petition : and I agree that it is not every order for costs, or every order made on petition, which will furnish a proper ground of appeal. But here is a petition in nature of a bill filed. It carries with it all the consequences of a chancery cause in the ordinary course of practice ; removal from a trust, account, and costs. I am prepared to say, that at least this court may, in its discretion, entertain an appeal either from an order for costs, or an order on petition ; and that the case before us is one in which we should do so.

<span>Appeal lies from order to remove guardian on petition.</span>

<span>Court of errors may, in its discretion, entertain an appeal from an order of chancery on petition : or an order to pay costs.</span>

But I am of opinion there is no error in the order ap-

NEW YORK, pealed from, except what seems to have arisen from an in-
Sept. 1826.
————— advertance of the chancellor in a very small matter; the
Disbrow
v.        costs of that part of the proceedings which related to Cross
Henshaw.  and Perry. In this single particular, I think the decree
Decree should should be modified.
be modified as
to costs.
         WOODWORTH, J., concurred.

         SAVAGE, Ch J., not having heard the argument, gave no
opinion.

         COLDEN, Senator. The first objection to the decree is,
that the proceeding on which it is founded is by petition;
whereas, the court of chancery, as the appellant contends,
[*356]   *could only take cognizance of the matters which are the
basis of the decree by bill.[1]
Right of guar-  That the court of chancery may determine the right of
dianship may
be determined guardianship by petition, is perfectly well established, as
on petition. well in the English courts as in our own. In the case of
Tenham v. Barret, (cited 2 P. Wms. 120,) there was no bill
pending; but only a petition to remove the guardian; and
determined against her. Upon which an appeal was
brought to the house of lords, before whom it was never
objected, says the lord commissioner, Sir Joseph Jekyll, nor
once thought of, that the court of chancery could not, on
petition only, determine the right of guardianship. In Ex
parte Champney, (Dick. 350,) it was held that the court
might appoint, on petition, a new guardian, in place of a
testamentary guardian who declined. And this decision
was made after the case had stood over on a doubt of the
master of the rolls, whether such an application could be
entertained without a bill.

         There are several cases in our own courts, to the same
effect. In the matter of Andrews, (1 John. Ch. Rep. 99,)
the proceedings were by petition, to remove a guardian
appointed by the surrogate. Chancellor Kent decides
that the general jurisdiction of the court of chancery over
a guardian as trustee, remains unimpaired in the court of

[1] See Waterman's American Chancery Digest, vol. 2, tit. Guardian and
Ward.

chancery; and that every guardian is responsible there for his conduct. In *Codwise* v. *Gelston*, (10 John. 521,) it is said by the judge who delivered the unanimous opinion of this court in that case, that "it may be difficult to draw a precise line between cases in which a party may be relieved upon petition, and in which he must apply more formally by bill. Petitions are generally for things which are matters of course, or upon some collateral matter, which has reference to a suit in court." And he assigns, among other reasons for retaining the petition, that the petitioner was not a *novus hospes*, he having been party to a suit which involved the consideration of the matters which were the subject of the petition.

I refer to this decision of chancellor Kent, principally for applying it to another objection that here suggests itself, *which is, that though the chancellor may take cognizance of the right of guardianship by petition, yet that he cannot settle matters of account between a guardian and his ward, but on bill and answer. However this may be where there is an original and isolated application to make a guardian account, I think in this case there needed no bill, because the application to remove the guardian grew out of a suit which he, as the next friend of a tenant in common with his ward, had instituted against them; ostensibly, for a partition of their property, but confessedly to effect a sale of it. The petition, therefore, as in the case of *Codwise* v. *Gelston*, had reference to a suit depending, and, indeed, was intimately connected with that suit; and it might be said of the parties, as was said of the petitioner in that case, that they were not strangers in the court. Here were the same parties to the suit that there were to the petition; and the bill and the petition related to the same property. Indeed, the propriety, or necessity for the petition, grew out of the bill and the proceedings upon it. In this case, *Ex parte Bromfield*, (1 Ves. Jun. 453,) referred to by judge Kent in *Codwise* v. *Gelston*, an heir at law applied by petition for the proceeds of a lunatic's estate, which had been paid into court. Though the chancellor thought proper, on account of the circumstances of

NEW YORK, Sept. 1826.

Disbrow
v.
Henshaw.

Guardian here liable to account on [*357] petition which grows out of, and is collateral to, a suit in court; the partition suit.

NEW YORK, that case, to order a bill, yet he made no suggestion that
Sept. 1826. the proceedings by petition would not have been proper,
—————— under ordinary circumstances.  This mode of proceeding
Disbrow
v.         appears to be recognized by the act relative to executors
Henshaw.   and guardians, (sess. 40, ch. 251, 4 Laws, 292, b.) which
           authorizes the chancellor, on the settlement of the accounts
           of guardians " on petition or otherwise," to make an allow-
           ance for services.

Right to      Again, if it be conceded that the court of chancery has
compel guar-
dian to ac- power to revoke a guardianship on petition, it must have
count, is inci- power to examine the conduct of the guardian on the same
dent to power
of removal on application.   That examination may, and indeed generally
petition.  will, involve a consideration of his administration of the
           estate, and affairs of his ward, and that must lead to an
[*358]     *examination and settlement of his accounts.   I see no ob-
           jection to this mode of proceeding.   It is well suited to the
           object.   All parties, on due notice, are brought before the
           court.   The guardian loses no advantage that he would
           have, if he were put to answer by bill.   The proceedings
           are, as much in the one case as in the other, under the co-
           trol of the court ; and if, as has been suggested, the ordina-
           ry rules of practice would press a guardian too closely,
           when the proceedings are by petition, there can be, and we
           are to presume always will be, on proper application, such
           special modifications of the general rules, as will give a
           guardian all the time he ought to have.

           On the other hand, there are obvious advantages in per-
           mitting summary proceedings against guardians.   They
           save time and expense.   The fortune of an infant might
           be dissipated, and those youthful years which ought to be
           devoted to his education, might be wasted before an unjust
           guardian could be coerced by proceeding upon bill and an-
           swer.

           [*He examined the facts, and concurred in the propriety of
           revoking the letters of guardianship.*]

           Being of opinion that the decree is not erroneous on the
           points specified in the second appeal, it is unnecessary to
           consider whether that appeal was in time or not.

           The remaining question is as to that part of the decree

which directs that the appellant shall pay to the petitioners the costs of the petition, and of the subsequent proceedings thereon, up to the time of the decree.

It is objected, that no appeal lays on a decree for costs. I do not think this is so, even in England. In *Owen v. Griffith*, (Ambl. 520,) lord Hardwicke said, the rule is not general that a party may not appeal for costs only. The first case in Brown's Parliamentary Reports, (*Pitt v. Page*,) is one in which a decree that the appellant should pay costs was reversed.

*Appeal lies from a decree for costs.*

But I think this question is put at rest, with us, by our statute concerning the court of errors, (1 R. L. 134,) which gives an appeal from all decrees, without any exception *as to decrees for costs; and I can conceive no reason why a party should be obliged to submit to a decree of this description, however erroneous it may be, more than to a decree touching any other matter. In the case of *Eastburn v. Kirk*, (2 John. Ch. Rep. 317,) which has been cited for the respondents, the chancellor gives no opinion on this point. The only reason assigned why there should not be an appeal for costs, is, that they are not given by statute, as they are in suits at common law, but rest in the discretion of the chancellor. So do a thousand other things which are submitted to the decision of the court of chancery; and I do not know why a party should not have a right to examine in this court, whether the chancellor has rightfully exercised his discretion. Costs, it is true, are not necessarily given in chancery to the successful party; but they must be given or refused on the whole merits of the case, as they may appear to the chancellor; and as he may mistake these merits in relation to the costs, I think his decision should be subject to review in this court, on this point as much as upon any other.

[*359]

I have no doubt, however, but that the appellant should be compelled to pay costs in this case. [*Here he examined the conduct of the guardian, the appellant, as it appeared in the master's report in the court below.*]

But I think the appellant ought not to be charged with the expenses of taking the account, so far as it related to

*The decree should be slightly modified as to costs.*

NEW YORK, the estate of Francis; and in this respect alone, I think the
Sept. 1826. decree of the chancellor should be modified.

Disbrow
v.                    But I am of opinion that the appellant should be allow-
Henshaw.     ed no costs on this appeal. The difference between his
paying the whole costs, and the costs so far as relates to the
the estate of his wards, will probably be but a few shil-
lings, or a few dollars. If it had been pointed out to the
chancellor, that the decree as entered, subjected the ap-
pellant to the costs of taking the account of the estate of
Francis, I have no doubt the decree would have been re-
stricted; and, in order to entitle the appellant to costs in
this court, I think he should have made it appear to us
[*360]        *that he had attempted to obtain a modification of the de-
cree in the court below. The appeal in this case, so far as
relates to costs, (and the first appeal was on no other
ground,) shows a spirit of litigation which, in my opinion,
ought not to be encouraged.[1]

I am of opinion that the decree of the chancellor should
be affirmed in all things, except as to the payment of costs;
and that as to these, it be so modified as that the appellant
pay the costs of the petition, and of taking the account so
far only as it relates to the estate of Elizabeth Gumble.

The court unanimously concurring in the views taken by
*Sutherland*, J., and *Colden*, Senator,

It was thereupon "ORDERED, ADJUDGED, and DECREED,
that the order of the court of chancery, made on the 18th
day of November, 1823, &c., be reversed, so far as the
same goes to subject the appellant, Benjamin Disbrow, to
pay costs arising upon such part of the proceedings as re-
lated to Abraham Cross and David Perry, junior; and that
in all other respects the same order be affirmed. And it
is further ordered, that the respondents recover against the
appellant, Benjamin Disbrow, their costs in this court to be
taxed," &c.

[1] See Waterman's American Chancery Digest, vol. 1, tit. *Appeal*.