WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE—
MARCH 1877.

## MATTER OF HOSFORD.

*In the matter of the application of* ELIZABETH HOSFORD,
*a minor, for the appointment of a guardian.*

The Surrogate has not, by the statute of this state, jurisdiction to appoint a guardian of the person and estate of a minor resident in another state of the Union, even if having property here.

The remedy is for a guardian appointed in such other state, to proceed by taking out letters here, under L. 1870, c. 59 ; 1875, c. 442.

Whether the Surrogate has such jurisdiction in case of a minor resident in a foreign country,—*query?*

The case of McLoskey *v.* Reid, 4 Bradf. 334, limited.

The petition alleged, among other things, that the petitioner was a minor over the age of fourteen years, residing at Springfield, in the state of Massachusetts : and that she was entitled to a certain property within the county of Westchester, to wit, a legacy of one thousand dollars bequeathed to her by Azuba F. Barney late of Greenburg, in said county, deceased ; and prayed that John C. Connor Jr. Esq., of the city of New York, be appointed the guardian of her person and estate.

JOHN C. CONNOR, JR., *for the petitioner*,

cited *Redf. on Surr.* 414, and *McLoskey* v. *Reid*, 4 *Bradf.* 334.

THE SURROGATE —The power to appoint guardians for minors is conferred on surrogates by the sections 4, 5 and 6, pp. 150, 151, 2 R. S. (5th Ed. Vol. 3 pp. 243, 244.) The first of those sections provides, that where the father shall have failed to appoint such guardian, by deed or will, then a minor "of the age of fourteen years, may apply, by petition, to the Surrogate of the county

where the residence of such minor may be," for the appointment of such guardian.   The next section provides for the application in behalf of one under fourteen years of age, " to the Surrogate of the county where such minor shall reside," for such appointment.   By the 6th section, it is provided that " the Surrogate to whom application may be made, under either of the preceding sections, shall have the same power to allow and appoint guardians as is possessed by the Chancellor," (now Supreme Court.)

Prior to 1870, the above statute conferred the only power over the subject, which the Surrogate possessed. It will be observed that the residence of the minor, in the county of the Surrogate, is a jurisdictional fact. Cases, in which questions affecting the jurisdiction of these officers in this regard, are referred to in *Redf. on Surr.* 409. (*Brown* v. *Lynch,* 2 *Bradf.* 214, *Ex-Parte Bartlett,* 4 *Ib.* 221, *Matter of Pierce,* 12 *How. Pr.* 532.)

It is claimed, on behalf of the petitioner, that this court has power to appoint a guardian of the person *or* estate.   This is undoubtedly true, in a case where it has jurisdiction.   I had occasion to pass upon that question in the *matter of Herbeck,* (16 *Abb. Pr. N. S.* 214,) in accordance with the view urged.

But the difficulty here encountered is, as I conceive, an entire want of jurisdiction to appoint a guardian of either the person or estate.   I am referred to the case of *McLoskey v. Reid,* (4 *Bradf.* 334) as an authority to show that such jurisdiction exists, in so far as the property of the minor is concerned.   True, the learned Surrogate there says, that the appointment of a guardian for the person or property of an infant is an act of jurisdiction dependent upon the situation of the person or the property within the territory of the state; and, elsewhere, "I can find no reason for doubting that the *situs* of

assets belonging to a minor has always been considered
a sufficient basis for a grant of guardianship." If it
were intended simply to declare that the Chancellor, in
such cases, had power to appoint a guardian, then the
Surrogate was, doubtless, correct, but if he intended to
claim jurisdiction himself, I must confess I cannot see
whence he derived it. Judging from the points submit-
ted by counsel in that case, the question does not seem
to have been discussed, and I conclude that the above
quoted *dicta* were derived from cases determined by the
English courts and our Chancellors, and without reference
to the fact that the Chancellor was clothed with much
more comprehensive power than a surrogate, who derives
his entirely from statute law. Possibly too, he may, with-
out careful examination, have considered that the stat-
ute clothed him with all the powers " possessed by the
Chancellor," and overlooked the fact that the exercise
of such power was limited to the Surrogate of the county
where the minor resided. In that case, the minor re-
sided in a foreign county, and the Surrogate may have
been impressed with the idea that international comity
required him to entertain the views expressed. Whether
right or wrong, in supposing that that fact conferred
jurisdiction, is of no consequence in this case, as no such
comity is recognized as between the different states of
the Union. On the whole, I am inclined to believe
that although not so stated by him, it was not intended
by that learned jurist to claim for himself the power to
appoint a guardian, but to indicate simply that the
Chancellor had such authority. In the same volume,
in *Ex-parte Bartlett, supra*, the same Surrogate dis-
cusses the question as to the residence of the minor be-
ing in New York or Brooklyn, in order to determine,
whether he, or the Surrogate of Kings, had jurisdiction
to appoint a guardian, and in *Brown* v. *Lynch, (supra)*,

.he holds that jurisdiction exists only where the minor is a resident of the county of the Surrogate.

Since the Revised Statutes,˙ above referred to, were enacted, two statutes have been passed, which furnish a remedy in this case; one in 1870 (chap. 59, of the session laws) to enable non-resident guardians to obtain property in this state, belonging to their wards residing in other states or territories of the United States, and another in 1875 (chap. 442), amendatory thereof. If the petitioner has a guardian in the State of Massachusetts, she may obtain the fund in question by complying with the requirements of this law, and, if she has not, she can procure the appointment of one, who can then, in like manner, be enabled to obtain its possession.

The application is denied.