and in each case the presumption of ownership in the lawful possessor was held to apply.

The attorney for Mrs. Shields also calls attention to the statute of limitations, and contends that such statute has run, and that this proceeding should be dismissed for that reason, as well as for the reason that the facts are in dispute. The cause of action to recover this property accrued on July 5, 1903, and it would seem that the statute had run against the remedy of the petitioner. Kelsey v. Griswold, 6 Barb. 436; Northrup v. Smith, 118 N. Y. 682, 23 N. E. 571. The proceeding is dismissed.

Proceeding dismissed.

(72 Misc. Rep. 310.)

In re SCOVILLE.

(Surrogate's Court, New York County.   May, 1911.)

1. EXECUTORS AND ADMINISTRATORS (§ 507*)—ACCOUNTING AND SETTLEMENT—JURISDICTION OF SURROGATE.

In a proceeding for the judicial settlement of the account of an executor, the surrogate has power to construe a will when necessary to the settlement.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2178–2191; Dec. Dig. § 507.*]

2. GUARDIAN AND WARD (§ 11*)—APPOINTMENT—TESTAMENTARY GUARDIAN.

Under Domestic Relations Law (Consol. Laws 1909, c. 14) § 81, authorizing a father or mother by will to appoint a guardian, a grandmother cannot by will appoint a guardian of her infant grandchildren to whom she devises or bequeaths property.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 34–39; Dec. Dig. § 11.*]

3. GUARDIAN AND WARD (§ 11*)—APPOINTMENT—TESTAMENTARY GUARDIAN.

The attempt of a testatrix to appoint the person named as executor guardian of her grandchildren, to whom she devised and bequeathed her residuary estate, is abortive, and the legal title vests in the grandchildren, according to the intention of the testatrix, but the intention to provide for the care and management of the property during the minority of the infants will be carried into effect, though the person she intended to vest with such care and management is designated as guardian, and not as trustee.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 34–39; Dec. Dig. § 11.*]

Proceedings for the judicial settlement of the account of John H. Scoville, executor of Mary H. Sutton, deceased. Decree entered.

Conway & Williams (Charles H. Beckett, of counsel), for executor.
Hampton D. Ewing, special guardian.
John C. Tomlinson, Jr., special guardian.
Hawkins, Delafield & Longfellow, for John H. Sutton.

FOWLER, S. [1] The matter is properly before the surrogate on the settlement of a decree in a proceeding for the judicial settlement of the account of John H. Scoville as executor of the will of Mary H. Sutton. The established jurisdiction of the surrogate to settle the ac-

counts of executors incidentally requires him to construe the will of Mary H. Sutton, and this the surrogate has power to do, but only when necessary to a final accounting and settlement of an estate. Burgess v. Marriott, 3 Curt. 424; Garlock v. Vandevort, 128 N. Y. 374, 28 N. E. 599.

The point for construction here is whether in the will the decree should provide that the person named as executor should continue to hold in trust during the several minorities of Lila Frances Scoville, Eben Sutton, and Mary Sutton, the grandchildren of the testatrix, the residuary bequests now coming to them, or whether the same are payable absolutely to the ancillary guardian of the said infants. The bequest consists of moneys in the hands of the accounting executor.

The clauses of the will which control its construction are as follows:

"VIII. After fulfilling the above bequests I hereby give, devise and bequeath to my said executor, John H. Scoville, as my trustee, all the rest, residue and remainder of my estate of whatsoever kind and wheresoever situated, and I direct that he hold the same subject to and upon and for the carrying out and fulfillment of the following trusts."

"XVI. All the rest, residue and remainder of my property, whether real or personal and wheresoever situate, including any and all bequests or devises that may for any reason have lapsed at the date of my death, by reason of the death before me or the life tenant or beneficiary or otherwise, or that may after the date of my death lapse or become ineffective, I give, devise and bequeath through my executor and trustee to my grandchildren, Lila Frances, Mary H., Eben and Osborne, if they shall be living at my death, the issue of any to take its parent's share, each of said grandchildren (or the issue of a deceased grandchild) to take an equal separate share thereof. If any shall have then died without issue, the survivors, or the issue of one deceased, to take that share.

"XVII. I appoint my said Executor, John H. Scoville, guardian of the respective estates under this will that may vest in each and all of my said grandchildren respectively, Lila Frances, Mary H., Eben and Osborne, during the minority of each respectively. So far as the law allows me I direct that this be without giving bond in such capacity in any state."

[2] The attempt in the will of the grandmother to constitute a testamentary guardian of her infant grandchildren is, of course, abortive. The history of testamentary guardians is short and plain. On the abolition of feudal tenures and guardianship in chivalry, the Legislature found it necessary to create a new species of statutory guardianships known as "statutory," or more generally as "testamentary" guardians. 12 Car. II, c. 24. This statute provides, in substance, that any father might by deed (of a testamentary nature, for such deed could have no operation until the death of appointer and was revocable at pleasure) or by will appoint a guardian for his children. This statute in force in New York was re-enacted from time to time by the Legislature of the state (1 K. & R. 181, § 18; 1 R. L. 368, § 18; 2 R. S. p. 150, § 1), and with a slight change continues on the statute book, but amplified by an amendment (Laws of 1893, c. 175), authorizing the surviving mother to appoint in like manner a guardian for her children. Dom. Rel. Law (Consol. Laws 1909, c. 14) § 81. The construction of this statute has never varied, and no one besides persons named in the statute may now constitute "statutory" or testamentary guardians. Ex parte Ilchester, 7 Ves. 370; Fullerton v. Jackson, 5

Johns. Ch. 278; Willard, Eq. Juris. 620, 621; Wuesthoff v. Germania Life Ins. Co., 107 N. Y. 580, 14 N. E. 811. The statute is exclusive and controlling on this point.

[3] But, although the effort of one in loco parentis or otherwise to constitute a testamentary guardian of infants is ineffectual, the courts of all those jurisdictions which recognize testamentary or statutory guardians, and like principles of testamentary law, are extremely astute to give effect to the evident desire of the testator, who erroneously names a guardian of infant devisees or legatees; and for this purpose they read a qualification, or condition, or trust, into such a testamentary gift. Sometimes such a construction is supported as a condition, at others as a trust (an abortive common-law condition or conditional limitation being often a trust in equity), and, again, as in this state since the Revised Statutes, by reading a trust of a power into the devise or legacy given to a testamentary guardian eo nomine by a person unauthorized by statute to name a guardian.

An examination of the authorities cited with approval by the Court of Appeals of this state confirms the statement just made. Thus, in Blake v. Leigh, Amb. 305, where the grandfather gave the residuary to his grandson, naming defendant Leigh, as guardian of the grandson, Lord Hardwicke said:

"The grandfather had no power to appoint guardians of his grandson, it being a right vested in the father; but any one can give his estate on what conditions he pleases."

The Lord Chancellor took it upon himself in this case to see to it that the conditions implied in the gift were substantially complied with, the father submitting to the will. Blake v. Leigh, A. D. 1756, is undoubtedly a leading authority on this point.

Pursuant to the rule announced in Manning v. Manning, 1 Johns. Ch. 529, Chancellor Kent followed Blake v. Leigh in the case of Fullerton v. Jackson, 5 Johns. Ch. 278, where he said:

"A grandfather has no right under the statute to appoint by will a guardian to his grandchild; but, as Lord Hardwicke observed in Blake v. Leigh (Ambler 306), he may give his estate on what conditions he pleases. * * * In the present case the testator intended that the rents and profits of the lands devised during the minority of his grandson should be appropriated by the executors towards his education. He had a right to annex that condition to the gift; and I do not see that I am required by any principle to call those rents and profits out of the hands of the executors and place them under the direction of the guardian."

The same principle was, I think, recognized by the vice chancellor in Hoyt v. Hilton, 2 Edw. Ch. 202, the only case not cited to me either directly or indirectly. There a bill of the infants by their father as "guardian of their persons and estates" was brought for the payment of legacies to them "or their guardians" against the executors named in their grandfather's will. The will of the grandfather had appointed his executors the testamentary guardians of the infants. The vice chancellor said:

"The grandfather in the present case had no power to appoint the guardians. * * * The party may, if he likes, take an order for the legacies to be paid into court for the benefit of the children; but not for the father to receive the money."

In their opinion in Matter of Kellogg, 187 N. Y. 355, 80 N. E. 207, 13 L. R. A. (N. S.) 288, the Court of Appeals of this state have gone over the ground with care and have prescribed the principle which should govern in this matter.

The same principle seems to be recognized in other jurisdictions of this country when similar statutes and like devises or bequests for the benefit of infants are sub judice.

In the case of Grimsley v. Grimsley, 79 Ga. 398, 5 S. E. 760, the testator gave a portion of his property to his grandchildren to vest in and belong to them, and provided that "the father of the five aforesaid children be their guardian, authorized to receive their portion without other appointment than this and without being required to give bond as such guardian." The court said:

"The father may appoint a testamentary guardian for his own children, but cannot appoint one for the children of anybody else. We will give effect to that part of the will, however, to this extent: We hold that by this appointment as testamentary guardian John J. Grimsley (father of the grandchildren) became trustee for these children, and held the property, not as guardian, but as trustee."

In the case of Camp v. Pittman, 90 N. C. 615, a devise direct to children not those of the testator with the addition that "it is my will and wish that C. A. Camp (parent) shall take charge of this property and manage it for the children, and act as guardian until they become of age," the court, in rendering the opinion, said:

"The use of these words (to act as guardian) in connection with the other words employed is used rather to define the authority conferred than indicate the degree of care and attention to be given in its exercise assimilating them to such as attach to a guardian appointed under the statute. The testator in disposing of his property has a perfect right to designate in whose hands it shall be placed for management for the benefit of others during a specified interval, as much so as to commit the whole estate to the executors in whose capacity and integrity they should vest."

In Vanartsdalen v. Vanartsdalen, 14 Pa. 384, there was a devise by the testator direct to the children of his daughter with a further provision that:

"My executors hereinafter named shall be guardians for the children of my said daughter during their minority and I do hereby nominate and appoint them for that purpose."

The court said:

"The act of 8th April, 1833, Dunlop, 571, an act relating to last wills and testaments, provides that every person competent to make a will, being the father of any minor child, unmarried, may devise the custody of such child, during his or her minority, or for any shorter period. From the words of the statute an inference arises that no person except the father has authority to exercise that right, and such is the construction of the statute. Charles 2, c. 21, § 8. Thus it is ruled in Ex parte Edwards, 3 Atkyns, 519, that the mother's appointment of a guardian to her son by will is void, the statute confining the power of appointing a testamentary guardian to the father. So far as the custody and care of the person of the infant is concerned, it cannot be doubted that a testamentary appointment by a grandfather, mother or stranger, is simply void. But although a grandfather may not appoint, under the statute, a guardian for his grandson, in derogation of the unquestioned right of the father, yet there is nothing to prevent him from giving his estate to him on that condition. Thus it is said in Blake v. Leigh, Am-

bler, 306, the grandfather has no power to appoint guardians of his grandson, it being a right vested in the father. But any one can give his estate on what conditions he pleases; and the father in this case submitted to the conditions of the will. There are instances where a grandfather has given his estate to his grandchild, and appointed guardians of his estate and person; and, if the father did not submit to the will, the court has made the testator's opposition work a forfeiture of the son's estate. But, if there is any gift to the father in the will and he submits to it, the court directs and appoints a guardian on his submission. In the present case the court has interposed, after the father had waived his parental right; therefore there is no ground to alter what was done with the consent of all parties. Even conceding that the testator has appointed a guardian for the persons of his grandchildren, as well as a trustee or curator of the estate devised, yet the appointment would be good, inasmuch as the father has submitted to the will by an enjoyment of the estate devised, in right of his wife, during her life; for it is only since her death that he has acted in opposition to the will. But, be this as it may, here the testator devises an estate to his grandchildren, and, for satisfactory reasons best known to himself, chooses to commit the custody and management of it to his own son, instead of to his son-in-law. It does not need the authority of Lord Hardwicke for the position that any one can give his estate on what conditions he pleases. It is plain that the testator does not mean to interfere with the natural right of the father to the custody and care of his children. All that is intended is to commit the management of the estate to his executors, who are appointed guardians of the children. It is of no sort of consequence that he designates them as guardians, rather than as trustees or curators of the estate for the benefit of the infants. The will must receive such a construction as is beneficial to the minors, at the same time carrying out the intention of the testator. The disposition in the will does not require the assent of the father, as none of his rights are affected by it, nor is it in his power to defeat its provisions, or, by an opposition, work a forfeiture of the estate, as perhaps might be the case if the grandfather had undertaken to deprive him of the care and management of his children. What right, then, has he to complain, when a grandfather or mother, or even a stranger, devises an estate to his children, coupled with a condition that its care and management shall be entrusted to another rather than to him?"

The court recognized the right of the person named as guardian to maintain ejectment to recover the property which had been devised to the children.

In Bush v. Bush, 2 Duv. (Ky.) 269, testator gave property to his minor grandchildren, and directed that it was to remain in another designated person's hands until the children should arrive at 21 years of age, then to pay the same over to the children. No provision was contained in the will for the appointment of guardian of the children. The court in the course of its opinion in the case says:

"A guardian can only be appointed by a parent or by the proper court. Any other testator may appoint a trustee, but, not being entitled to the custody of the personal property of the infant, he cannot appoint a guardian for it; but, as the estate bequeathed by him is fully within his own control, he may bequeath it under such restrictions and conditions as he may deem proper, but can take no control of the minor nor of its other property."

In Post v. Hover, 33 N. Y. 593, testator gave property to his three grandchildren. He ordered and directed that during the minority of said three grandchildren his son should take charge of and have the management of the property, and out of its avails support his grandchildren and their mother if she remained single. He then appointed his son John guardian of his three grandchildren during their minority

131 N.Y.S.—14

and as such guardian to have charge of their estate. The question debated was whether there was a devise in trust by implication to the son of the property, which, if that were so, would unlawfully suspend the power of alienation and render the devise void. It was held that the devise carried a legal estate to the infants, and that there was no such trust, and that the son took simply a valid power in trust for the management of the property.

Judge Denio, in the course of his opinion says:

"But after the language by which the charge and management of the property is committed to him, and the duty is devolved upon him of supporting the children and their mother out of the avails of the estate, the testator proceeds to appoint him guardian of the three grandchildren during their minority, and, as such guardian, to have charge of their estate. A guardian, as is well-known, has no estate in the lands of his ward, but only a power of management. A grandfather, it is true, has no power to appoint a guardian for his grandchildren by last will. Fullerton v. Jackson, 5 Johns. Ch. 278. This testator thought otherwise, and, by assuming to do so, he may be supposed to indicate the kind of authority which he intended to commit to his son John. He intended to confer such a charge of or power over the estate as a guardian may rightfully exercise over the lands of his ward. This repels the idea of the devise of a legal title nearly as strongly as if he had possessed the power which he attempted to exercise."

In Matter of Lichtenstadter, 5 Dem. 214, testator gave to his two grandchildren a certain share in his estate, and provided:

"And I hereby appoint my said son, Solomon (their father), guardian of the said estate of the said children. Said Solomon is not to be required to give any bond or security in the matter of the said guardianship and is especially authorized to expend such portion of the principal and interest, income, rents, issues or profits of their said estate in the care, education and maintenance of such children as to him may seem advisable."

Surrogate Rollins held that the provision, though abortive as an appointment of a guardian, as a fact made the appointee a trustee of the property bequeathed to his children.

In Matter of Kellogg, 187 N. Y. 355, 80 N. E. 207, 13 L. R. A. (N. S.) 288, the testator by his will provided:

"Fourth. I nominate and appoint Charles S. Parke and Risley Tucker to be guardians of the persons of my three children, and Augustus B. Kellogg, George H. Dunston and George C. Miller to be the joint guardians of the estates of each of my three children, and I direct that all funds and securities belonging to each of my children shall be received, held and paid out by them jointly as such guardians."

The mother of the children having survived the testator, the attempt to appoint a guardian was ineffective, and the question was as to whether the persons designated as guardians were entitled to receive the fund given to the infants; and the court held they were to have the same power that would be exercised by a legally appointed guardian.

Most of the cases cited above are approved in Matter of Kellogg. In all of them where there was an abortive attempt to appoint a guardian there was some active duty or power expressly conferred by the testator on the person nominated as guardian in addition to such a nomination, except in Vanartsdalen v. Vanartsdalen, 14 Pa. 384, where there was a mere designation of the guardian, and he was held

entitled to possession of the property of the infant. Vanartsdalen v. Vanartsdalen is in point, and was approvingly referred to in Matter of Kellogg.

It seems to the surrogate that the principle to be deduced from the cases cited is that an attempt to appoint a person guardian of the property given to an infant by one not its parent, while inoperative as an appointment, gives such person the power he would have possessed over the property had he been a duly appointed guardian or trustee of a power.

The testatrix in the cause at bar, by paragraph sixteenth of her will gives her property "through my executor and trustee," and by paragraph seventeenth appoints her "executor, John H. Scoville, guardian of the respective estates under this will that may vest in each and all of my said grandchildren respectively * * * during the minority of each respectively. So far as the law allows me, I direct that this be without giving bond in such capacity in any state." What was in the mind of the testatrix in providing that she gives the property "through her executor and trustee" is not quite apparent. Whatever it was, it throws no real light on the inquiry. There is no doubt that the legal title to the property went direct to the grandchildren of testatrix, and there is no doubt that the testatrix so intended. It is apparent that she also saw the need of having some one to care for and manage the property during the infants' minorities, and that she intended to provide therefor. Such care and management appertain to the office of guardian, which accounts for her mistaken opinion that she could appoint one for the purpose. Her intention to provide for such care and management cannot be defeated because she has designated the person whom she intended to invest with such care and management guardian of the property bequeathed, and not trustee. It seems to the surrogate that the person so designated is entitled to the possession of the property.

The counsel for the ancillary guardian of the infants, in his most admirable and lucid argument, has not, it seems to the surrogate, been able to distinguish the cause at bar in principle from the adjudications cited from this and other states. Were the question an original one, the surrogate would be inclined to pay great attention to the force of the counsel's contention. It is not an original question, and the surrogate has no power to disregard a principle laid down by precedents of binding authority.

The decree may pass as submitted, if nothing is to be added at the foot thereof.

Decreed accordingly.